# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  EVERGREEN SECURITY, LTD.
**Bankruptcy Case No. 6:01-Bk-533-ABB**

---

**STEERING COMMITTEE FOR
EVERGREEN SECURITY, LTD.,**

                              **Appellants,**

**-vs-**                                        **Case No.  6:05-cv-740-Orl-31KRS**

**R.W. CUTHILL, JR.,**

                              **Appellees.**

---

## ORDER

The Steering Committee for Evergreen Security, Ltd. ("the Committee") appeals an order of

the Bankruptcy Court[1] awarding a fee of $429,521.88 to R.W. Cuthill, Jr. ("Cuthill").  This Court has

jurisdiction over the appeal pursuant to 28 USC § 158.

**I.      Background**

Principals of Evergreen Security Ltd. ("Evergreen") defrauded investors out of hundreds of

millions of dollars.  When the scheme finally collapsed in January 2001, Evergreen filed a voluntary

Chapter 11 petition.  (Doc. 14 at 4).  On March 14, 2001, the Bankruptcy Court appointed Cuthill as

Chapter 11 Trustee to oversee Evergreen and to recover funds for the benefit of Evergreen's

victims/creditors.  (Doc. 14 at 4).  Pursuant to the Chapter 11 Plan confirmed by the Bankruptcy Court

---

[1]A copy of the order, titled "Findings of Fact and Conclusions of Law Regarding Application
of R.W. Cuthill Jr., President, For Award of Compensation i/a/o $429,521.88," is attached as Exhibit
2 to the first docket entry in this case.

on May 28, 2004, Cuthill became President of Evergreen and continued to perform essentially the same duties. (Doc. 14 at 4). In both roles, Cuthill was to receive compensation based on the amount of money creditors received as a result of his efforts.[2] As Chapter 11 Trustee, he was to be paid based on the sliding scale set forth in Section 326 of the Bankruptcy Code. (Doc. 14 at 10). As President, he was to be paid based on a sliding scale set forth in the Chapter 11 Plan. (Doc. 14 at 11). The Committee now appeals the amount awarded by the Bankruptcy Court to Cuthill in his role as President.

## II.  Standard of Review

In an appeal of a decision of the Bankruptcy Court, this Court sits as an appellate court. When reviewing the Bankruptcy Court's findings of fact, this Court applies the clearly erroneous standard. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lightner v. Lohn*, 274 B.R. 545, 548 (M.D. Fla. 2002). The burden of showing clear error falls on the party seeking to overturn the Bankruptcy Court's findings. *In re Caribbean K Line, Ltd.*, 288 B.R. 908, 911 (S.D. Fla. 2002).

This Court reviews the Bankruptcy Court's conclusions of law under a de novo standard. *Williamson*, 15 F.3d at 1038. Under de novo review, this Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court. *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).

---

[2]Cuthill also received hourly pay and reimbursement for expenses, but only the compensation tied to the funds recovered for creditors is at issue in this appeal. (Doc. 14 at 10).

### III.    Analysis

Section 326(a) of the Bankruptcy Code limits the compensation that a court may award a

Chapter 11 trustee for his services, based on the amount of "moneys disbursed or turned over in the

case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."

11 U.S.C. § 326(a).  The court may award the Chapter 11 trustee up to 25 percent of the first $5,000

so disbursed, up to 10 percent of the next $45,000 disbursed, up to five percent of the next $950,000,

and up to three percent of all amounts disbursed over $1,000,000.  11 U.S.C. § 326(a).  In the Chapter

11 Plan, the parties adopted the same sliding scale for Cuthill's compensation as president of

Evergreen, although the Plan tied the compensation to the amount "recovered" by Cuthill as president,

rather than the amount "disbursed."  (Doc. 2, Exh. 11 at 8).

Cuthill received an award of $207,579.65 as compensation for his services as trustee.  (Doc.

20 at 9).  On January 28, 2005, the Bankruptcy Court awarded Cuthill $429,521.88 in compensation

for his services as president.  (Doc. 1, Exh. 2).  The Committee contends that a portion of the fee

awarded to Cuthill for his services as president constitutes "double-dipping" – in other words,

compensation for funds that Cuthill had actually recouped (and been compensated for) in his role as

trustee.  (Doc. 14 at 12).

The Committee says it is "not necessary" for this Court to "perform the calculations necessary

to determine the correct amount of compensation due to the President."  (Doc. 14 at 22).  Instead, the

Committee suggests vacating and remanding the fee award with instructions to the Bankruptcy Court

that the compensation owed to the President cannot be based upon any funds received by the Debtor

prior to the Confirmation Date.  (Doc. 14 at 22). The Committee contends, and the Court agrees – at

least *arguendo* – that "[t]he person who once occupied the position of trustee and now occupies the position of president should not be rewarded twice based on the same recovery of money." (Doc. 14 at 17).  However, both in its appeal briefs and in its argument at the hearing, the Committee has failed to produce a shred of evidence that Cuthill is being rewarded twice.

The Bankruptcy Court based the  $207,579.65 trustee fee on Evergreen's April 30, 2004 financial report, which showed a total of $6,144,321.57 in cash available for operations.[3]  (Doc. 20 at 9).  The $429,521.88 awarded to Cuthill as a presidential fee was based on the total cash received by Evergreen from May 28, 2004 (the confirmation date) to September 30, 2004, a total of $15,075,729.21.[4]  (Doc. 20, Exh. 14 at 5).  The Committee has not produced any evidence that less than $6,144,321.57 had been collected prior to confirmation.  The Committee has not produced any evidence to suggest that any of the $15,075,729.21 was actually collected pre-confirmation and was therefore included in the $6,144,321.57 upon which the trustee fee was based.  To the contrary, the Bankruptcy Court indicated that the presidential fee was "based upon assets collected post-confirmation." (Doc. 1, Exh. 2 at 6). More than $14 million of the $15,075,729.21 came in a lump sum – a single settlement payment – and could not have been included in the pre-confirmation total. And the Committee stated that the total amount recovered between the confirmation date and

---

[3]Section 326 of the Code provides that the trustee may be awarded $53,250 for the first $1 million disbursed, plus 3 percent of everything over $1 million.  11 U.S.C. § 326(a).  Three percent of $5,144,321.57 is $154,329.65; adding this to the $53,250 for the first $1 million disbursed produces a total fee of $207,579.65.

[4]Three percent of $14,075,729.21 is $422,271.88; adding this to the $53,250 for the first $1 million received produces a total fee of $475,521.88.  Because Cuthill had already received $46,000 in his role as president, the Bankruptcy Court deducted that amount, resulting in an award of $429,521.88.  (Doc. 1, Exh. 2 at 7).

September 30, 2004 was "approximately $15,075,729.21 (based on financial information provided by the President)." (Doc. 2 at 21-13). On this record, the Court cannot conclude that the Bankruptcy Court clearly erred in finding that Cuthill's presidential fee should be based on the $15,075,729.21, that that sum did not include any overlap with the $6,144,321.57 used to calculate the trustee fee, and that, after all appropriate deductions, the presidential fee should total $429,521.88.

Moreover, the Court notes that the Committee's objection has changed over time. The Committee objected to the presidential fee on two grounds: first, that Cuthill had only disbursed about $3 million as trustee, entitling him to a trustee fee approximately $100,000 less than the $207,579.65 he received, and that this $100,000 should be deducted from his presidential fee (Doc. 2 at 11); and, second, that the literal language of the Chapter 11 Plan required a deduction of *all* payments made to Cuthill, not just those made to him in his role as president, and therefore the entire $207,579.65 should be deducted from the presidential fee (Doc. 2 at 16). On appeal, the Committee abandoned those arguments and began making the "double-dipping" argument. Generally speaking, an issue cannot

be raised for the first time on appeal.  *See, e.g.*, *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201

(11th Cir. 1989) (finding that district court correctly concluded that debtor's objections to fee award

did not present exceptional circumstances precluding application of rule that an issue cannot be raised

for the first time on appeal).

In consideration of the foregoing, it is

**ORDERED THAT** the Bankruptcy Court's Order of January 28, 2005 awarding R.W. Cuthill,

Jr. compensation in the amount of $429,521.88 is **AFFIRMED**.


**DONE** and **ORDERED** in Orlando, Florida on October 17, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties